**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| JOHNATHAN BUTTERMORE,<br><br>        Plaintiff,<br><br>        v.<br><br>CALIBER HOME LOANS and<br> VERICREST FINANCIAL, INC.,<br><br>        Defendants. | ) <br>) <br>) <br>) <br>) <br>)   Civil Action Number 15-1514<br>) <br>) <br>) <br>) <br>) <br>) |

## OPINION

Plaintiff, Johnathan Buttermore ("plaintiff"), proceeding pro se, filed this action in October 2015 in the Court of Common Pleas of Greene County, Pennsylvania. (ECF No. 1 ¶ 1.) Defendant Caliber Home Loans ("Caliber") timely removed the action, invoking this court's diversity jurisdiction. (Id. at ¶¶ 2-3, 8-14.) In doing so, Caliber submitted proof that Vericrest Financial, Inc. is not a separate corporate entity and that Caliber, which is a citizen of Delaware and Texas, is the only party in interest. (Id. ¶¶ 5-6; ECF No. 1-2 at 2-3.) Plaintiff does not challenge these jurisdictional facts. Shortly after filing its notice of removal, Caliber filed a motion to dismiss four of the fourteen counts pled in the complaint. (ECF No. 5.) For the reasons set forth below, Caliber's motion will be granted.

### I.   Factual Background

This case arises out of a dispute between plaintiff and Caliber, the servicer of the mortgage on his home. Plaintiff avers that after he filed for bankruptcy protection in December 2009, Caliber engaged in a course of misconduct and harassment which included, for example, a) modifying the terms of his mortgage, without notice, resulting in increased costs and fees, b)

refusing to advise him about the amount overdue and outstanding on his mortgage, resulting in his mortgage payments being deemed insufficient and partial, c) failing to pay property taxes from his escrow account, d) initiating foreclosure proceedings, and e) engaging in harassing and abusive collection practices via telephone. (ECF No. 1-1 at 5-10.)  Plaintiff notes that his wife is also a signatory on the mortgage and did not file for bankruptcy protection, yet was subject to the same misconduct and harms. (Id. ¶¶ 4, 15-16, 19.)   Plaintiff's wife is not a named plaintiff in this case.

Plaintiff's complaint consists of fourteen counts:

1) Fair Debt Collection Practices Act ("FDCPA")
2) Pennsylvania Fair Credit Extension Uniformity Act
3) Truth in Lending Act ("TILA")
4) Pennsylvania Unfair Trade Practices and Consumer Protection Law
5) Negligence
6) Breach of Fiduciary Duty and Covenant of Good Faith and Fair Dealing
7) Promissory Estoppel
8) Defamation
9) Negligent Hiring
10) Negligent Supervision
11) Breach of Contract
12) Intentional Infliction of Emotional Distress
13) Fraud in the Inducement
14) Punitive Damages

(ECF No. 1-1 at 9-27.)   Plaintiff seeks an award of monetary damages, as well as recession of the mortgage contract and reimbursement of all amounts paid under it to date.[1] (Id. and ¶ 208.)

Caliber moves to dismiss Counts 8 through 10 and 12 of the complaint. (ECF No. 5.)  Plaintiff did not oppose dismissal of the defamation claim, and therefore Count 8 will be dismissed, with prejudice, without further discussion.  Counts 9, 10, and 12 will be dismissed, without prejudice, because, as set forth in this opinion, they are insufficiently pled.

---

[1]  Although Caliber does not raise this issue in its motion to dismiss, it would appear that plaintiff's wife, as a signatory and obligee, would be a necessary party with respect to any cause of action that seeks to rescind, void, or modify the mortgage contract.

## II.   **Legal Standards**

The Court of Appeals for the Third Circuit recently reiterated the standards and procedures that a district court must apply when deciding a motion to dismiss made pursuant to Rule 12(b)(6):

> A complaint may be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." But detailed pleading is not generally required. The Rules demand "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.; see also Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n. 27 (3d Cir. 2010). Although the plausibility standard "does not impose a probability requirement," Twombly, 550 U.S. at 556, it does require a pleading to show "more than a sheer possibility that a defendant has acted unlawfully," Iqbal, 556 U.S. at 678. A complaint that pleads facts "merely consistent with a defendant's liability ... stops short of the line between possibility and plausibility of entitlement to relief." Id. (citation and internal quotation marks omitted). The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.
>
> Under the pleading regime established by Twombly and Iqbal, a court reviewing the sufficiency of a complaint must take three steps. First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." Iqbal, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679; see also Burtch v. Milberg Factors, Inc., 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

Connelly v. Lane Const. Corp., No. 14-3792, --- F.3d ---, 2016 WL 106159, at *3-4 (3d Cir. Jan. 11, 2016).

At the final step of the analysis, the court is to assume all well-pled allegations of "historical fact" to be true, construe those allegations in the light most favorable to the plaintiff, draw all reasonable inferences from the facts in favor of plaintiff, and ask whether those facts "raise a reasonable expectation that discovery will reveal evidence" to support the legal claim being asserted. Id. at *7. Allegations of historical fact are assumed to be true even if "unrealistic or nonsensical," "chimerical," or "extravagantly fanciful." Id. at *6 (citing Iqbal, 556 U.S. at 681). "Put another way, Twombly and Iqbal expressly declined to exclude even outlandish allegations from a presumption of truth except to the extent they resembled a 'formulaic recitation of the elements of a ... claim' or other legal conclusion." Id.

III. **Analysis**

A. **Negligent Hiring and Supervision (Counts 9 and 10)**

Caliber contends in its motion to dismiss Counts 9 and 10 that plaintiff's complaint consists of "blanket, conclusory statements that merely recite the elements of the claim" without describing any instances of specific misconduct by Caliber employees, including details about any specific interaction with a particular employee or harm that resulted, or providing information about Caliber's hiring or supervision procedures. (ECF No. 6 at 7-8.) In response, plaintiff argues that the complaint contains specific allegations about Caliber's misconduct, in particular, that it modified his mortgage without notice, initiated foreclosure proceedings, even though timely payments were being made, and failed to pay taxes out of the escrow account, all of which resulted in higher interest payments, increased mortgage length, higher property tax payments, and mental anguish. (ECF No. 11 at 4.) Plaintiff explains that it is

impossible for him to know what Caliber's procedures and policies are about these matters at this juncture, and therefore, his complaint does not, and cannot, include specific allegations about those facts. (Id. at 5.)

**Step One:** First, the court must take note of the elements plaintiff must plead in order to state claims, under Pennsylvania law,[2] for negligent hiring and supervision. Pennsylvania recognizes employer liability for negligence in connection with the employment or supervision of its employees "consistent with the Restatement (Second) of Agency," which provides that "[a] person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless: (a)...; (b) in the employment of improper persons or instrumentalities in work involving risk of harm to others; or (c) in the supervision of the activity." Young v. Temple Univ. Campus Safety Servs., No. 15-2892, 2015 WL 6503386, at *4 (E.D. Pa. Oct. 28, 2015) (citing Heller v. Patwil Homes, Inc., 713 A.2d 105, 107 (Pa. Super. Ct. 1998) (quoting Restatement (Second) of Agency § 213)). Such a claim is "specifically predicated on two duties of an employer: the duty to reasonably monitor and control the activities of an employee, and the duty to abstain from hiring an employee and placing that employee in a situation where the employee will harm a third party." Belmont v. MB Inv. Partners, Inc., 708 F.3d 470, 488 (3d Cir. 2013) (citing Hutchinson v. Luddy, 742 A.2d 1052, 1059-60 (Pa. 1999)).

---

[2] The parties both discuss Pennsylvania law in their briefs. Given that the mortgaged property is located in Pennsylvania, and that plaintiff is a resident of this state, there appears to be no reasonable dispute that Pennsylvania substantive law applies in this diversity action. Kovach v. Turner Dairy Farms, Inc., 929 F.Supp.2d 477, 495 n.12 (W.D. Pa. 2013) (citing decisions).

In order to state a plausible claim for employer liability for negligent hiring or supervision, a complaint must allege facts that, if true, would establish "the four elements of common law negligence, i.e., duty, breach, causation, and damages." Belmont, 708 F.3d at 488 (citing Brezenski v. World Truck Transfer, Inc., 755 A.2d 36, 42 (Pa. Super. Ct. 2000)). A complaint must also allege facts that would establish that the employer knew or should have known of a reason not to hire the employee or of the necessity for exercising control over the employee because he or she had a propensity to engage in the misconduct that occurred. Belmont, 708 F.3d at 491 (citing Devon IT, Inc. v. IBM Corp., 805 F.Supp.2d 110, 132 (E.D. Pa. 2011)); Dempsey v. Walso Bureau, Inc., 246 A.2d 418, 422 (Pa. 1968); McClain v. RBS Citizen's Bank, N.A., 57 F.Supp.3d 438, 442 (E.D. Pa. 2014) (citing Keffer v. Bob Nolan's Auto Serv., Inc., 59 A.3d 621, 662 (Pa. Super. Ct. 2012)).

As an initial matter, it is important to clarify the character of the claims pled by plaintiff. There is a distinction in the legal authority between claims based upon employee misconduct that occurred within the scope of employment, and outside the scope of employment. Although a review of Pennsylvania law reveals no significant difference in the analysis to be applied once it is determined whether the employee acted within or outside his scope of employment, the distinction is worthy of mention at the outset. Plaintiff acknowledges by the facts pled in the complaint, and the arguments made in opposition to the motion to dismiss, that, to the extent Caliber's employees engaged in misconduct, they did so during, in furtherance of, and within the scope of their employment. (ECF No. 11 at 3.) In such circumstances, Caliber is directly liable if it was negligent or reckless in hiring or supervising an employee. Brezenski, 755 A.2d at 39; see Restatement (Second) of Agency § 213. Caliber could also be held vicariously liable for the misconduct of its employees under general principles of agency law. Brezenski,

755 A.2d at 39; <u>Cahill ex rel. Cahill v. Live Nation</u>, 866 F.Supp.2d 503, 513 (W.D. Pa. 2011);

<u>see</u> <u>Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.</u>, 42 F.3d 1421, 1434-35 (3d Cir.

1994) (explaining and applying general agency law to acts of corporate representatives).

Although plaintiff's complaint is not explicit in this fact, it is apparent that plaintiff seeks to

impose direct liability on Caliber for its negligence in hiring and supervising its employees in

Counts 9 and 10, and, in the remainder of the complaint, seeks to impose vicarious liability upon

Caliber for the actions of its employees, which plaintiff contends violated various state and

federal statutes, and Pennsylvania common law.  Caliber's motion to dismiss challenges only the

direct liability claims pled in Counts 9 and 10.

Under the other theory of liability for negligent hiring and supervision, which this

court does not understand plaintiff to have pled, a plaintiff can seek to impose direct liability on

an employer that acted negligently in hiring, retaining, or supervising an employee who causes

harm while she is acting outside the scope of her employment. <u>Heller</u>, 713 A.2d at 107-08 (citing

Restatement (Second) of Torts § 317); <u>see</u> <u>Dempsey</u>, 246 A.2d 418, 422; <u>Belmont</u>, 708 F.3d at

488-89.  This is a tort theory of liability, not an agency theory of liability.  Because the

allegations of the complaint contradict any suggestion that plaintiff considers Caliber's

employees' misconduct to have occurred outside the scope of their employment, this theory will

not be separately discussed further.

**Step Two:**  The next step is for this court to identify which allegations in the

complaint are conclusory legal averments and which are "allegations of historical fact."

<u>Connelly</u>, 2016 WL 106159, at *6.  <u>Connelly</u> teaches that allegations that "resemble[] a

formulaic recitation of the elements of a claim" or paraphrase the pertinent statutory language of

the claims in question are legal conclusions that are entitled to no presumption of truth and must be excluded in assessing the sufficiency of a complaint. Id.

Counts 9 and 10 consist of some conclusory legal averments. Both Counts 9 and 10 begin with a recitation that Caliber failed to "properly interview" and "properly supervise" its employees, and to "properly execute all other duties owed to plaintiff." (ECF No. 1-1 ¶ 157(a)-(c) & (g), ¶ 161(a)-(c), & (g).) Such conclusory statements are entitled to no weight in the continuing analysis. Plaintiff's general averment that "they were [sic] owned [sic] reasonable care in entering into said mortgage with the Defendants that they would not suffer harm as a result of Defendants [sic] failure to supervise their respective representatives" is also conclusory and eliminated from further analysis. (Id. ¶ 162.)

**Step Three:** At the final step of the analysis, the court must assume that the remaining well-pled allegations of "historical fact" are true, construe them in the light most favorable to plaintiff, draw all reasonable inferences from them in favor of plaintiff, and ask whether those facts "raise a reasonable expectation that discovery will reveal evidence" to support the legal claim being asserted. Connelly, 2016 WL 106159, at *7. Even if the allegations are unrealistic, nonsensical, or outlandish, the court must accept them as true. Id. at *6. The court will consider each challenged count separately.[3]

Negligent Hiring (Count 9): Plaintiff contends that Caliber engaged in negligent hiring by failing to ensure that its employees had sufficient knowledge of, background in, or aptitude to understand the various statutes and laws that he claims were violated. (ECF No. 1-1 ¶¶ 157-58.) Assuming these allegations to be true, and drawing all reasonable inferences in plaintiff's favor, plaintiff still does not sufficiently plead a negligent hiring claim under

---

[3] Although negligent hiring and supervision claims are often grouped, and analyzed together, the court deems it advisable to consider the factual allegations specific to each count in assessing the sufficiency of the complaint.

Pennsylvania law. Caliber's duty is to "abstain from hiring an employee and placing that employee in a situation where the employee will harm a third party." Belmont, 708 F.3d at 488. Plaintiff must allege facts indicating that Caliber knew or should have known of an employee's propensity to engage in the misconduct that allegedly occurred. Id. at 491.

The initial defect in plaintiff's complaint is that he identifies no specific employee, or even class of employees, who are accused of being inexperienced or inept. The court, therefore, must presume for purposes of deciding the present motion to dismiss that plaintiff's allegations apply equally to any and all individuals hired by Caliber who interacted with plaintiff, or completed work on his mortgage; a presumption that stretches the bounds of reasonableness.

Even making this presumption, the court concludes that plaintiff fails to adequately plead a claim for negligent hiring. A potential employee's lack of knowledge about or experience with a particular statute or legal theory is not probative of that employee's likelihood to violate the law. Similarly, a potential employee's alleged lack of aptitude to understand those laws is not probative that the employee will violate them. It, at most, indicates that the potential employee will prove to be incompetent and unable to perform his or her duties for the employer. The law, however, does not impose liability on an employee for hiring the incompetent. Restatement (Second) of Agency § 213, cmt. d.

Plaintiff's complaint consists of no allegations of historical fact indicating that Caliber hired any employee into a position in which he would harm a third party or knew or should have known of any employee's likelihood to violate the law. Plaintiff's complaint relies entirely upon the premise that because Caliber's employees allegedly violated the law, it must follow that Caliber was negligent or reckless in hiring them. That premise does not set forth the

9

facts necessary to sufficiently plead a negligent hiring claim in Pennsylvania.[4]  Caliber's motion to dismiss Count 9 will be granted, without prejudice.

Negligent Supervision (Count 10):  In his negligent supervision claim, plaintiff contends that Caliber failed to ensure that its employees were complying with the various statutes or laws that he claims were violated.  (ECF No. 1-1 ¶ 161(d)-(f).)  Plaintiff further claims that Caliber had unidentified written and unwritten policies and procedures that ensured the collection of debt "by any means necessary" and "knowingly documented false information as it pertained to communications with the plaintiff." (ECF No. 1-1 ¶¶ 163-68.)  Assuming these allegations to be true, and drawing all reasonable inferences in plaintiff's favor, plaintiff still does not sufficiently plead a negligent supervision claim under Pennsylvania law.  To reiterate, Caliber's duty is to "reasonably monitor and control the activities of its employees." Belmont, 708 F.3d at 488.  Plaintiff must allege facts indicating that Caliber knew or should have known of the necessity to exercise control over an employee because he or she was likely to engage in misconduct. Id. at 491.

As with the negligent hiring claim, the initial defect in plaintiff's negligent supervision claim is that he identifies no specific employee, or even class of employees, who are alleged to have engaged in conduct giving rise to a particularized duty of supervision.  The court must, therefore, presume that plaintiff's theory is either that Caliber knew or should have known that all its employees were engaging in wholesale misconduct, giving rise to a duty to monitor all of their activity, which duty it breached, or that Caliber conducted absolutely no supervision of its employees, giving rise to a per se breach of its duty to supervise.  Plaintiff fails to state a claim under either theory.

---

[4] As referenced earlier in this opinion, to the extent that these Caliber employees violated the law, Caliber will be liable because it is the principal of its agents (employees).

*Wholesale Employee Misconduct*:  Plaintiff does not allege in Count 10, or elsewhere in the complaint, that Caliber knew or had reason to believe that its employees, as a whole, were violating the law, falsifying information, or engaging in any other misconduct. (ECF No. 1-1 ¶¶ 161(d)-(f), 163-68.)  No reasonable inference can be made about this element of a negligent supervision claim based upon the facts that are pled in the complaint.  Plaintiff's factual accusations about unidentified customer service representatives providing contradictory information, harassing him via telephone, and refusing to cooperate with him, comply with his requests for information, or settle the present dispute are not of such a nature that they can, by proxy, act as indicators that Caliber was on notice of widespread and rampant employee misconduct giving rise to a special duty to supervise the Caliber workforce as a whole. (ECF No. 1-1 ¶¶ 27, 32, 34-35, 37-38, 59, 185.)   Plaintiff's factual allegations about how employees applied procedures and policies to him likewise cannot raise an inference that Caliber knew or should have known that its workforce was engaged in pervasive misconduct.  The complaint explicitly assigns responsibility for the allegedly anti-mortgagee policies and procedures to Caliber itself. (ECF No. 1-1 ¶ 163 ("[Caliber] had policies and procedures for their respective parties to refer to and follow"), ¶ 167 ("[Caliber's] policies, written or otherwise, sought to have debts collected by any means necessary"), ¶ 168 ("[Caliber's] policies were incorporated to ensure…").)  The complaint, therefore, directly contradicts any suggestion that the policies would have been eradicated if Caliber had adequately supervised its employees.

The complaint does not allege, and supports no reasonable inference, that Caliber knew or should have known that all its employees were independently engaging in widespread misconduct, giving rise to a heightened duty to monitor its entire workforce.  Plaintiff does not allege that he was harmed because a particular Caliber employee, or group of employees,

independently decided to violate his rights; he alleges that he was harmed because it was Caliber's corporate policy to harm its customers as a matter of practice. Plaintiff fails to adequately plead a negligent supervision claim based upon the theory that Caliber's supervision was inadequate because every Caliber employee was engaged in unauthorized misconduct and Caliber failed to adequately supervise them.

*Complete Failure to Supervise:* To be clear at the outset, plaintiff does not allege in his complaint that Caliber completely failed to supervise its workforce. The court considers this theory only in the interest of completeness in assessing whether any possible negligent supervision claim is adequately pled. This theory, however, cannot be deemed adequately pled because the facts alleged in the complaint directly contradict it. The complaint, as pled, establishes not that Caliber failed to supervise its employees, but that Caliber instructed its employees to violate the law. Plaintiff contends that Caliber's employees violated the law and abused customers pursuant to policies and procedures designed by and implemented at the direction of Caliber. (ECF No. 1-1 ¶¶ 163, 167-68.) Plaintiff does not allege, even in the alternative, facts from which a reasonable inference could be made that Caliber engaged in absolutely no supervision of its employees. The only facts alleged in the complaint are ones that conflict with such a theory of liability. As a result, plaintiff fails to adequately plead a negligent supervision claim based upon the theory that Caliber completely failed to supervise its workforce.[5]

---

[5] If discovery reveals that plaintiff was the victim not of Caliber's anti-mortgagee policies, but of the acts of a group of employees acting without Caliber's authorization, but under circumstances in which Caliber should have known of the misconduct, plaintiff can move to amend the complaint. At present, however, plaintiff has not adequately pled this kind of negligent supervision claim, even in the alternative.

Plaintiff's complaint fails to state a claim for negligent supervision under Pennsylvania law under any possible theory. Caliber's motion to dismiss Count 10 will therefore be granted, without prejudice.

**B. <u>Intentional Infliction of Emotional Distress (Count 12)</u>**

Caliber contends that plaintiff's intentional infliction of emotional distress claim is subject to dismissal for at least three reasons: (1) a reasonable person would not consider the conduct alleged in the complaint to be extreme and outrageous; (2) plaintiff fails to plead that he suffered physical harm due to its misconduct; and (3) plaintiff fails to plead sufficient facts to enable Caliber to determine whether the claim is barred by the two-year statute of limitations. (ECF No. 6 at 9-12.) In opposition, plaintiff contends that a reasonable person would consider it outrageous for a mortgage servicer to add charges to an account, refuse to pay taxes from escrow, and initiate foreclosure proceedings even though a mortgagee was paying on the mortgage and only after the mortgagee filed for bankruptcy protection. (ECF No. 11 at 7.) Plaintiff argues that Caliber is incorrect that the law requires a physical harm to be alleged and that there is no statute of limitations concern because Caliber's misconduct "continued even after the complaint had been filed." (<u>Id.</u> at 8.)

**Step One:** First, the court must take note of the elements plaintiff must plead in order to state a claim, under Pennsylvania law, for intentional infliction of emotional distress. The Pennsylvania Supreme Court has yet to formally recognize a cause of action for intentional infliction of emotional distress, but it has indicated that if it were to recognize such a cause of action, a plaintiff would, at minimum, need to establish that (1) the defendant's conduct was intentional or reckless, (2) the defendant's conduct was extreme and outrageous, (3) the defendant's conduct caused emotional distress, and (4) the resultant emotional distress was

severe. <u>Rios v. Marv Loves 1</u>, No. 13-cv-1619, 2015 WL 5161314, at *12 (E.D. Pa. Sept. 2, 2015) (citing <u>Taylor v. Albert Einstein Med. Ctr.</u>, 754 A.2d 650, 652 (Pa. 2000)); <u>see</u> <u>Toney v. Chester Cnty. Hosp.</u>, 961 A.2d 192, 201 (Pa. Super. Ct. 2008); <u>Pavlik v. Lane Ltd./Tobacco Exporters Int'l</u>, 135 F.3d 876, 890 (3d Cir. 1998). The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society. <u>Buczek v. First Nat'l Bank of Mifflintown</u>, 531 A.2d 1122, 1125 (Pa. 1987).

To the extent state and federal courts in Pennsylvania recognize a claim for intentional infliction of emotional distress, they consistently require that a plaintiff suffer some physical manifestation of his alleged emotional distress. <u>Reeves v. Middletown Athletic Ass'n</u>, 866 A.2d 1115, 1122 (Pa. Super. Ct. 2004); <u>Minarsky v. Susquehanna Cty. & Thomas Yadlosky</u>, No. 3:14-cv-02021, 2016 WL 183280, at *4 (M.D. Pa. Jan. 13, 2016) (citing Pennsylvania decisions); <u>Ghrist v. CBS Broad., Inc.</u>, 40 F.Supp.3d 623, 630 (W.D. Pa. 2014) (same); <u>Kane v. Chester Cty. Dep't of Children, Youth & Families</u>, 10 F.Supp.3d 671, 693 (E.D. Pa. 2014) (same). Pennsylvania courts further require a plaintiff to support an assertion of a physical manifestation of emotional distress with competent medical evidence. <u>Lawson v. Pa. SPCA</u>, No. 13-7403, 2015 WL 4976523, at *9 (E.D. Pa. Aug. 20, 2015); <u>Wilson v. Am. Gen. Fin. Inc.</u>, 807 F.Supp.2d 291, 303 (W.D. Pa. 2011) (citing Pennsylvania decisions).

**Step Two:** The next step is for this court to identify which allegations in the complaint are conclusory legal averments and which are "allegations of historical fact." <u>Connelly</u>, 2016 WL 106159, at *6. As stated above, <u>Connelly</u> teaches that allegations that "resemble[] a formulaic recitation of the elements of a claim" are entitled to no presumption of truth and must be excluded in assessing the sufficiency of a complaint. <u>Id.</u> Plaintiff's intentional

infliction of emotional distress claim consists of seven paragraphs. The final paragraph, which states that "Plaintiff has and continues to be damaged," is entitled to no weight. The remaining allegations are factual in nature and will be considered by the court in assessing the sufficiency of the complaint.

 **Step Three:** Lastly, the court must assume that the remaining well-pled allegations of "historical fact" are true, even if they are unrealistic, nonsensical, or outlandish, construe them in the light most favorable to plaintiff, draw all reasonable inferences from them in favor of plaintiff, and ask whether those facts "raise a reasonable expectation that discovery will reveal evidence" to support the legal claim being asserted. <u>Connelly</u>, 2016 WL 106159, at *6-7. Although the court finds that plaintiff minimally meets the requirement of pleading extreme and outrageous misconduct, his intentional infliction of emotional distress claim must nevertheless be dismissed because he fails to allege any facts from which this court could reasonably infer there was a physical manifestation of his alleged emotional distress. In addition, the claim is inadequately pled with respect to the chronology of events given the applicable two-year statute of limitations.

 <u>Extreme and Outrageous Conduct</u>: Caliber seeks dismissal of Count 12 on the ground that no reasonable person could consider its alleged misconduct to go beyond all possible bounds of decency, and be atrocious, and utterly intolerable in a civilized society. (ECF No. 6 at 9-11.) In response, plaintiff highlights those facts pled in the complaint that, he argues, would lead a reasonable person to look upon Caliber's conduct with "sheer outrage and contempt." (ECF No. 11 at 6-8.)

In Count 12, plaintiff alleges that Caliber refused to resolve the instant dispute or provide him with "a current amount due," initiated multiple foreclosure attempts, and caused him to modify the terms of his mortgage even though Caliber knew that he was not in breach of his obligations under the mortgage. (ECF No. 1-1 ¶¶ 184-89; see also ¶¶ 19-23, 27, 33-36, 37-38.) Although not pled as part of Count 12, elsewhere in the complaint plaintiff contends that Caliber engaged in this, and other, misconduct, such as refusing to pay taxes out of his escrow account, refusing to provide notice of various modifications and proceedings, and harassing him via telephone. (Id. ¶¶ 18-22, 27, 31, 33, 37-38, 59.) If these allegations are true, which the court must assume them to be, they could plausibly state the extreme and outrageous conduct element of an intentional infliction of emotional distress claim, especially because Caliber allegedly attempted or threatened to foreclose on plaintiff's home on "multiple occasions." (Id. ¶ 112(f).)

This court previously considered the sufficiency of a complaint that alleged an intentional infliction of emotional distress claim in the context of an individual's interactions with a company servicing her mortgage in Wilson v. American General Finance, Inc.. In that case, the court reproduced two examples set forth in the commentary to § 46 of the Restatement (Second) of Torts. Wilson, 807 F.Supp.2d at 304. The first example illustrates actionable behavior:

> 7. A, as creditor, seeking to collect a debt from B, sends B a series of letters in lurid envelopes bearing a picture of a lighting about to strike, in which A repeatedly threatens suit without bringing it, reviles B as a deadbeat, a dishonest man, and a criminal, and threatens to garnish his wages, to bother his employer so much that B will be discharged, and to "tie B up tight as a drum" if he does not pay....

Id. (citing Restatement (Second) of Torts § 46 cmt. e(7)). The second example illustrates conduct that is not so extreme or outrageous as to trigger liability.

8. A, as a creditor, seeking to collect a debt, calls on B and demands payment in a rude and insolent manner. When B says that he cannot pay, A calls B a deadbeat, and says that he will never trust B again....

Id. citing Restatement (Second) of Torts § 46 cmt. e(8)).  In Wilson, this court found that the conduct alleged was closer to the non-actionable, second example because, among other reasons, there were no threats that plaintiff would lose her home. Wilson, 807 F.Supp.2d at 303-04.

The facts pled in the instant action are different.  Plaintiff avers that Caliber initiated foreclosure proceedings against him, more than once, even though it knew that he was making proper payments on his mortgage debt. (ECF No. 1-1 ¶¶ 23, 112(f).)  Although Caliber denies these allegations, for present purposes the court must presume that they are true.  A reasonable person could consider a mortgagor's initiation of repeated foreclosure proceedings without justification to be extreme, outrageous, and intolerable conduct.  In addition, plaintiff contends that Caliber refused to provide notice of various modifications and proceedings against him, presumably so that he could take steps to protect his property, only took action against his property after he emerged from bankruptcy, and engaged in a variety of harassing conduct via telephone, that, based upon the facts pled, must have taken place on multiple occasions. (Id. ¶¶18-22, 27, 33, 37-38, 59.)  Taken together, and assuming that the historical facts pled are true, which the court must, Caliber's first challenge to the sufficiency of plaintiff's intentional infliction of emotional distress claim fails.

Physical Manifestation of Emotional Distress:  Caliber seeks dismissal of plaintiff's intentional infliction of emotional distress claim on the ground that plaintiff fails to plead that he suffered physical harm as a result of its alleged outrageous conduct. (ECF No. 6 at 10.)  In response, plaintiff states that Caliber "is incorrect in their conclusion that plaintiff must suffer some type of resulting physical harm." (ECF No. 11 at 6.)  Plaintiff does not argue, even

in the alternative, that he suffered a physical manifestation of his emotional distress.  He opposes

dismissal solely upon other legal grounds.  As set forth above, however, Pennsylvania courts

require that a plaintiff prove by competent medical evidence that a physical manifestation of

alleged emotional distress occurred in order to sustain an intentional infliction of emotional

distress claim.

The Pennsylvania appellate court decision to which plaintiff cites in support of his

contrary recitation of the law is distinguishable.  In <u>Krysmalski by Krysmalski v. Tarasovich</u>,

622 A.2d 298 (Pa. Super. Ct. 1993), the plaintiff asserted a negligent infliction of emotional

distress claim under a bystander theory of liability.  The pertinent issue presented on appeal was

whether a mother who was not hit by a car, but who observed the car hit and seriously injure her

children, could assert a negligent infliction of emotional distress claim. <u>Id.</u> at 302-06.  The court

found that the mother was entitled to relief because "the driver of a vehicle in Pennsylvania owes

a duty of care to all motorists and pedestrians in his immediate zone of danger and to any

bystander who experiences a contemporaneous observance of an injury to a close relative." <u>Id.</u> at

304 (citing <u>Mazzagatti v. Everingham by Everingham</u>, 516 A.2d 672, 679 (Pa. 1986)).  The court

explained that, in bystander cases, the dispositive question is whether the claimant

"contemporaneously observed" the accident, thus establishing a direct causal link to any

contemporaneous emotional distress, not whether there was proof that the psychic injury

physically manifested. <u>Krysmalski</u>, 622 A.2d at 305.  The appellate court found that the factual

record supported the jury's finding that the mother contemporaneously observed the accident,

thus establishing the required elements of a negligent infliction of emotional distress claim. <u>Id.</u> at

304-05.  Plaintiff does not assert a negligent infliction of emotional distress claim under a

bystander theory of liability, but a claim for intentional infliction of emotional distress.   The

elements of these two causes of action are different, making <u>Krysmalski</u> inapposite to the motion before this court.

<u>Krysmalski</u> fails to support plaintiff's position for a second reason. In <u>Krysmalski</u>, the appellate court rejected the tortfeasor's alternative argument that the negligent infliction of emotional distress claim failed as a matter of law because the mother submitted no medical evidence to substantiate her claim of emotional distress. <u>Id.</u> at 395. The court rejected that argument "for the simple reason that medical evidence is not required in an action for damages for negligent infliction of emotional distress." <u>Id.</u> In doing so, the court explicitly distinguished intentional infliction of emotional distress claims because those claims include a "medical proof requirement." <u>Id.</u> (citing <u>Kazatsky v. King David Memorial Park</u>, 527 A.2d 988, 995 (Pa. 1987)). As a result, <u>Krysmalski</u> actually supports Caliber's argument that plaintiff must allege facts indicating how he will confirm his alleged emotional distress with competent medical evidence in order to plead an intentional infliction of emotional distress claim.

Plaintiff does not include any assertion in his intentional infliction of emotional distress claim, or elsewhere in his complaint, from which this court could reasonably infer that he suffered a physical manifestation of emotional distress as a result of Caliber's conduct. There are no facts pled from which this court could reasonably infer that plaintiff will be able to prove by competent medical evidence that he suffered such harm. Plaintiff avers only that "Plaintiff has [sic] and continues to be damaged." (ECF No. 1-1 ¶ 190.) The court previously excised this allegation from any assessment of the sufficiency of the complaint because it is conclusory. Although plaintiff specifically asserts that he suffered "embarrassment," "humiliation," "emotional distress," and "loss of life's enjoyments" in connection with his negligent hiring and supervision claims, those counts have been dismissed. In any event, such allegations are not

supported by any assertions of fact concerning the manner in which plaintiff's emotional distress physical manifested itself or how plaintiff would confirm the same with medical evidence. The allegations, therefore, cannot meet the pleading requirements applicable to plaintiff's intentional infliction of emotional distress claim.

Caliber's motion to dismiss Count 12 is granted, without prejudice, because plaintiff did not make factual allegations sufficient for this court to infer that has a plausible claim for intentional infliction of emotional distress under Pennsylvania law.

Statute of Limitations: Caliber's final challenge to plaintiff's intentional infliction of emotional distress claim is that there are no allegations about when the alleged harmful action took place, making it impossible to determine whether, or to what extent, the claim may be barred by the statute of limitations. (ECF No. 6 at 12.) In response, plaintiff asserts summarily that there "are no statute of limitations issues" because he pled that the misconduct continued even after the complaint was filed. (ECF No. 11 at 8 (citing ECF No. 1-1 ¶ 104).) Plaintiff is correct that, to the extent he contends that the misconduct continued after he filed suit, the claim is not barred by the statute of limitations.

The complaint, however, on its face, raises concerns about this matter. For instance, the only foreclosure proceeding specifically referred to in the complaint occurred in January 2011. (ECF No. 1-1 ¶ 23 and at 33.) Plaintiff filed his complaint in state court in October 2015, well beyond the applicable two-year limitations period for a claim based upon such conduct. 42 Pa.Cons.Stat. § 5524, Ormsby v. Luzerne Cty. Dep't of Pub. Welfare Office of Human Servs., 149 F.App'x 60, 62 (3d Cir. 2005). The only other time-frame that the court could locate in the complaint is an allegation that Caliber's misconduct took place "only after Plaintiff emerged from bankruptcy." (ECF No. 1-1 ¶ 102.) Although plaintiff indicates that he

filed for bankruptcy in 2009, there is no allegation in the complaint with respect to when that case was closed. (ECF No. 1-1 ¶ 15.)  Publically-available court records indicate that plaintiff was discharged from a bankruptcy proceeding that was initiated in 2009 by order dated May  in May 4, 2010, more than five years before plaintiff filed his complaint in state court. In re: Buttermore, No. 09-28942, ECF No. 19 (Bankr. W.D. Pa. May 4, 2010).  Given this chronology, the complaint's lack of critical details about when Caliber's alleged misconduct occurred is particularly problematic.  Such information should be pled in the event plaintiff reasserts this intentional infliction of emotional distress claim.

Although this challenge is not determinative given plaintiff's failure to plead sufficient factual allegations for the court to conclude that he has a plausible intentional infliction of emotional distress claim, plaintiff is advised to be cognizant of the statute of limitations issue should he seek leave to file an amended complaint to replead the claim.

IV.  **Conclusion**

For the foregoing reasons, Caliber's motion to dismiss will be granted.  Count 8 is dismissed, with prejudice.  Counts 9, 10, and 12 are dismissed, without prejudice.

An appropriate order will be filed contemporaneously with this opinion.


Dated: January 25, 2016                    BY THE COURT,

                                           */s/ Joy Flowers Conti*
                                           Joy Flowers Conti
                                           Chief United States District Judge


cc:  **JOHNATHAN BUTTERMORE**
      939 South 88 Rd
      Carmichaels, PA 15320